## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

KATRINA REEVES and
JAMES LEE REEVES,

        Plaintiffs,

v.                              CIVIL ACTION NO.   3:20-0423

WAYNE COUNTY BOARD OF EDUCATION;
WAYNE COUNTY;
WAYNE COUNTY COMMISSION;
WAYNE COUNTY SHERIFF, RICHARD THOMPSON,
individually,
TODD ALEXANDER, individually;
HOWARD MEDDINGS, individually; and
DEPUTY HARRY SOWARDS, individually,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiffs' Motion for Summary Judgment (ECF No. 181) and Defendant Howard Meddings's Motion for Summary Judgment (ECF No. 182). For the reasons herein, Howard Medding's Motion is **DENIED**. Plaintiffs' Motion, to the extent it seeks summary judgment against Mr. Meddings, is also **DENIED**.

### I. FACTUAL BACKGROUND

This case is centered around an alleged break-in at a Wayne County Board of Education ("WCBOE") bus garage in fall 2019 and the investigation that followed. There are few undisputed facts here. Plaintiffs Katrina and James Lee Reeves have been employees of WCBOE for years; Mrs. Reeves worked as a school bus driver, while Mr. Reeves worked in the WCBOE bus garage.

Am. Compl. ¶¶ 18–23, ECF No. 21. The Reeveses maintained consistent employment with WCBOE for almost twenty years. *Id.* Defendant Meddings was a coworker of Mr. Reeves, employed as parts supervisor at the WCBOE bus garage. *Id.* ¶ 10. Mr. Reeves and Meddings did not have an amicable relationship. They had applied for the same job in the past, with the WCBOE awarding the position to Mr. Reeves. Pls.' Mem in Supp. of Mot. for Summ. Jdgmt. at 5-6, ECF No. 181, Def.'s Mem. in Supp. of Mot. for Summ. Jdgmt. at 5-6, ECF No. 183. Meddings had filed grievances against Mr. Reeves. *See* Ex. 13, ECF No.179-14. Meddings admits that he likely told the WCBOE superintendent, Mr. Alexander, that Mr. Reeves was stealing the WCBOE on multiple occasions. Meddings Depo. at 85-86, ECF No. 181-5.

That fall, a break-in allegedly occurred at WCBOE's bus parts barn. Over the following months, an investigation into the break-in took place, which the Reeves claim eventually led to their suspension, arrest, and constructive termination. Am. Compl. at ¶¶ 35–85. Meddings's alleged conduct and motives are at the heart of this case, and from there the accounts of parties differ dramatically.

Plaintiffs essentially allege that Meddings' actions were part of a long-standing pattern of wider abuse and animus towards the Plaintiffs. *See* e.g. Am. Compl. ¶¶ 25-33. Their allegations are that Mr. Meddings was improperly involved with the investigation of the break-in, which was led by his longtime friend Deputy Sowards. *Id.* at ¶ 35-72. Throughout the course of this investigation, Mr. Meddings allegedly spread false information that he knew would lead to the arrests of the Reeveses. *Id.* Mr. Meddings was undoubtedly interviewed regarding the missing items and helped to identify items located on Mr. Reeves's property as belonging to the WCBOE. Def.'s Mem. at 2, 4. Mr. Meddings admits his involvement in the investigation, but says he merely acted properly and within the scope of his employment to help the police investigate an alleged

criminal activity. Def.'s Mem. at 7. He argues that his testimony shows that he had no ill will or bad faith in any accusations levelled against the Reeveses. *Id*.

The investigation led to criminal charges against the Reeves. *See* Criminal Complaints, ECF Nos. 181-23, 181-24. While the other counts against the Reeveses were dismissed, Mr. Reeves was indicted by a grand jury for embezzlement. *See* Indictment, ECF No. 181-27; Criminal Judgment Orders, ECF No. 184-32, 184-33. Because of the criminal charges, Mr. Reeves was placed on unpaid suspension. Ex. 17, ECF No. 181-18.  Mrs. Reeves was also suspended, and later, terminated. Ex. 29, ECF No. 181-30. The news of their suspension and the criminal charges appeared in local newspapers. *See* Am. Compl. ¶ 74-75.

These events culminated in the Reeveses filing an eleven-count complaint. Meddings is one of seven named defendants in this case. Specifically, Meddings is named in the following counts: (1) Civil Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983 (Count III); (2) Invasion of Privacy/False Light (Count VI); (3) Defamation (Count VII); and (4) Intentional Infliction of Emotional Distress (Count VIII). Plaintiffs moved for summary judgment against Mr. Meddings on these four counts (ECF No. 181). Mr. Meddings cross-filed his Motion for Summary Judgment. These Motions are now ripe for resolution.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

A. Immunity

Defendant first contends that he is entitled to qualified and statutory immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether qualified immunity applies, the court must conduct a two-step analysis. *Id.* at 232. First, the court must determine whether the record supports a violation of a constitutional right. *Id.* Second, the court must determine whether the right was "clearly established at the time of defendant's alleged misconduct." *Id.* (internal quotation marks and citation omitted). To be considered clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639

(1987). If both factors result in the affirmative, qualified immunity does not apply. *Pearson*, 555 U.S. at 232. The Supreme Court in *Pearson* directed that the analysis does not need to be applied in sequence depending on the circumstances of each individual case. *Id.* at 236.

Similarly, West Virginia law provides statutory immunity from liability for an employee of a political subdivision unless his acts were manifestly outside the scope of employment or were done with malicious purpose, bad faith, or in a wanton or reckless manner. *See* W. Va. Code Ann. § 29-12A-5(b)(1). Both qualified immunity and statutory immunity can be overcome by a showing of malicious conduct. *See W. Va. Div. of Nat. Res. v. Dawson*, 832 S.E.2d 102, 116-17 (W. Va. 2019) ("[A] state actor's malicious conduct will overcome qualified immunity protections."); W. Va. Code Ann. § 29-12A-5(b)(1).

Defendant is and was, at the time of the complaint, the employee of the WCBOE, which is a political subdivision as defined by the statute. *Id*. § 29-12A-3(c). Defendant essentially argues that he acted within the scope of his employment and merely assisted the police in their investigation. Def.'s Mem. at 3-6. Further, he contends that Plaintiffs have failed to provide any evidence of malicious purpose to overcome immunity, based mainly on his own testimony. *See id.* at 5-6. Parties dispute the characterization of almost all of the facts on the record. However, based on other existing evidence, a jury could infer that Defendant acted maliciously in assisting law enforcement and in his actions generally. For example, multiple witnesses testified about Defendant's animus towards the Reeveses. A juror could reasonably infer, from the evidence discussed below in the other claims, that Defendant acted maliciously and intentionally towards Plaintiffs. Further, this may lead to the inference that Meddings intended the accusations to lead to false criminal charges, depriving the Reeveses of their constitutional rights, which prevents him

from relying on qualified immunity to insulate him from their claims. Accordingly, the claim for qualified immunity must be **DENIED**.

B. Civil Conspiracy

"To establish a conspiracy claim under § 1983, a plaintiff 'must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right.'" *Penly v. McDowell Cnty. Bd. of Educ.,* 876 F.3d 646, 658 (4th Cir. 2017) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 357-58 (4th Cir. 2014)). "This burden is 'weighty.'" *Id.* (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). "While they need not produce direct evidence of a meeting of the minds, [plaintiffs] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* (quoting *Hinkl*e, 81 F.3d at 421) The evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* (quoting *Hinkle*, 81 F.3d at 421).

Defendant argues that the civil conspiracy claim must be dismissed because Plaintiffs "have failed to prove that Meddings acted alone or in concert to commit an unlawful act or commit a lawful act by unlawful means." Def.'s Mem. at 6.  Defendant contends that he acted within the scope of his employment in participating in the existing investigation and has no independent authority to conduct an investigation. *Id*. The only evidence cited in support of this is Meddings's own deposition testimony. *Id.* at 7. Of course, Deputy Sowards's testimony also largely mirrors Meddings and suggests that Meddings was only tangentially involved in the investigation. *See* Sowards Depo. at 91-96, 126-131, 216, ECF No. 179-16.

But of course, Plaintiffs' testimony establishes the exact opposite. Plaintiffs have shown at least some facts which could support a finding of conspiracy to falsely accuse the Reeves and subject them to arrest. For example, Plaintiff's evidence suggests that Mr. Meddings was personally very involved in the ensuing police investigation and causing the criminal complaint to issue: Meddings contacted multiple other bus garage employees instructing them not to cooperate with the investigation into the Reeveses, Meddings Depo. at 164-68, ECF No. 179-6; Meddings would text and meet with Deputy Sowards, potentially about the investigation, Meddings Depo. at 166-174; Spaulding Depo. at 31-32, ECF No. 179-5. Indeed, Mr. Meddings may have obtained pictures, texts, and records contained within Mr. Reeves's cell phone, access from which purportedly came from Deputy Sowards. Spaulding Depo. at 31-32, 38; Spaulding Aff. ¶ 20, ECF No. 179-12. Duncan Depo. at 11-12, ECF No.179-21. The record establishes that Mr. Meddings was present at the investigation of the Reeves's home, though parties dispute his level of involvement there. In short, the testimony conflicts greatly and could lead to a reasonable inference in favor of either party's version of events. Accordingly, there is sufficient evidence that precludes this Court from finding summary judgment in favor of the Defendant, and the Motion must be **DENIED**.

C. Defamation

In West Virginia, a claim for defamation requires a plaintiff to plead and prove the following elements: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiffs; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983). However, even when all of these elements are met, the defense of qualified privilege exists when a person "publishes a statement in good faith about a subject in which he has an interest or duty

and limits the publication to those who have a legitimate interest in the subject matter." *Zsigray v. Langman*, 842 S.E.2d 716, (W. Va. 2020) (quoting Syl. Pt. 4, *Dzinglski v. Weirton Steel Corp*. 445 S.E.2d 219 (W. Va. 1994). "[H]owever, a bad motive will defeat a qualified privilege defense*." Id.*

Defendant contends that he should be awarded summary judgment on the defamation claim because he is entitled to qualified privilege, as he believed in good faith the information was true and because, as a parts supervisor at the bus garage, he had an interest and duty to provide the information. *See* Mot. at 8-9. The only record evidence supporting this assertion of privilege is Defendant's own testimony that he believed the information in good faith. *See id*.; Meddings Depo. at 289-90. However, in that same deposition, Defendant acknowledged that he had no proof of any theft and multiple other employees stated in their depositions that Mr. Meddings made these statements to them weekly despite this lack of proof. *See* Meddings Depo. at 66, 98-99; Alexander Depo. at 17-21, 24-25, 49, ECF No. 179-4; Thompson Depo. at 31-33, ECF No. 179-8; Spaulding Depo. at 13-14.

Having proof is, of course, not dispositive of whether one held a belief in good faith, but the facts here are inconclusive as to whether Mr. Meddings held the belief in good faith. The total circumstances of Defendant's alleged animus and past conduct towards the Plaintiffs could lead to a finding that precludes good faith, particularly as multiple witnesses have testified that Mr. Reeves and Mr. Meddings had issues and applied for the same job. *See e.g.* Alexander Depo. at 38-39; Ex. 12, ECF No. 179-12; Ex. 13, ECF No. 179-13; Sammons Depo. at 47-49, ECF No. 179-7, Spaulding Depo, at 13-14, 26-27. Further, Plaintiffs testify precisely to this ill will on the part of Mr. Meddings in their own depositions. *See* K. Reeves Depo. at 84-85, ECF No. 184-12; J. Reeves Depo. at 119-124, ECF No. 184-6.

Accordingly, Defendant has not proved good faith entitling him to summary judgment. However, for largely the same reasons, Plaintiffs have also not established a conclusive lack of good faith that would entitle them to summary judgment on the defamation claim. Defendant's testimony as to his good faith belief and conflicting testimony which stated that he had no issue with the Reeveses creates a genuine issue of material fact. Accordingly, summary judgment on the defamation count must be **DENIED** for both parties.

D. Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs, Inc*., 504 S.E.2d 419 (W. Va. 1998). Whether conduct may reasonably be considered outrageous is a legal question for the trial court to determine. *See id*., Syl. Pt. 4.

Defendant's argument for summary judgment again rests on the fact that he acted in good faith and with no personal vendetta against the Reeveses, and thus, no rational trier of fact could find that Defendant's conduct in the matter was outrageous or intentional. Def.'s Mem. at 9-10. For exactly the same reasons discussed regarding his defamation claim, Defendant has not established his good faith nor qualified privilege for the purposes of summary judgment. Accordingly, it is also **DENIED** as to this count.

E. Invasion of Privacy, Malicious Prosecution, and Abuse of Process

Plaintiffs assert that they are entitled to summary judgment against Defendant on this claim. Pls.' Mem. in Supp. of Mot. for Summ. Jdgmt. at 24-27. However, the Court dismissed this allegation against Defendant. *See* Order on Def.'s Mot. to Dismiss (ECF No. 66). Accordingly, Plaintiffs' Motion as to this Count is **DENIED**.

Plaintiffs' Motion also seeks Summary Judgment against Mr. Meddings on the malicious prosecution and abuse of process claims. *See* Pls.' Motion at 1. Defendant is not actually named in these Counts, and so the Motion as to these Counts is **DENIED**. *See* Am. Compl. at 19-21.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Summary Judgment (ECF No. 181) is **DENIED** as to the claims against Defendant Meddings. However, Defendant Meddings's Motion for Summary Judgment against the Reeveses (ECF No. 182) is also **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          November 19, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE