## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

KATRINA REEVES and
JAMES LEE REEVES,

                    Plaintiffs,

v.                                            CIVIL ACTION NO.  3:20-0423

WAYNE COUNTY BOARD OF EDUCATION;
WAYNE COUNTY;
WAYNE COUNTY COMMISSION;
WAYNE COUNTY SHERIFF, RICHARD THOMPSON,
individually,
TODD ALEXANDER, individually;
HOWARD MEDDINGS, individually; and
DEPUTY HARRY SOWARDS, individually,

                    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiffs' Motion for Summary Judgment on Liability against Defendant Todd Alexander [1] (ECF No. 181) and Defendant Todd Alexander and Defendant Wayne County Board of Education's ("WCBOE") Motion for Summary Judgment (ECF No. 188). For the following reasons, the Defendants' Motion is **GRANTED** and the Plaintiff's Motion is **DENIED.**

### I. BACKGROUND

This case is centered around an alleged break in at a Wayne County Board of Education ("WCBOE") bus garage in the fall of 2019 and the investigation that followed. There are few

---

[1] The Motion also requests summary judgment against Defendants Howard Meddings and Harry Sowards, but these claims have been addressed in separate orders.

undisputed facts here. Plaintiffs Katrina and James Lee Reeves have been employees of WCBOE for years; Mrs. Reeves worked as a school bus driver, while Mr. Reeves worked in the WCBOE bus garage. Am. Compl. ¶¶ 18–23, ECF No. 21. The Reeveses maintained consistent employment with WCBOE for almost twenty years. Mr. Reeves had one coworker, Defendant Meddings, the parts supervisor at the WCBOE bus garage, with whom he had a contentious relationship. *Id.*

After being informed of an alleged break-in, the WCBOE superintendent, Mr. Alexander, contacted the Wayne County Sheriff's Office to investigate. Deputy Harry Sowards took the lead on the case and investigated. From there, parties fundamentally disagree over the scope, propriety, and fairness of the investigation and Mr. Alexander's involvement in it.

The investigation led to criminal charges against the Reeves. *See* Criminal Complaints, ECF Nos. 181-23, 181-24. While the other counts against the Reeveses were dismissed, Mr. Reeves was indicted by a grand jury for embezzlement. *See* Indictment, ECF No. 181-27; Criminal Judgment Orders, ECF No. 184-32, 184-33. Because of the criminal charges, Mr. Reeves was placed on unpaid suspension. Ex. 17, ECF No. 181-18. Mrs. Reeves was also suspended, and later, terminated. Ex. 29, ECF No. 181-30. The news of their suspension and the criminal charges appeared in local newspapers. *See* Ex. 10, ECF No. 185-18.

Plaintiffs essentially allege that Mr. Alexander knew that the Reeveses were innocent of the charges because there was no inventory of the bus garage ever taken, several other employees also possessed unused bus parts, and he knew of Mr. Meddings' animus towards the Reeveses. *See* Pls.' Resp. at 1-4, ECF No. 191. Accordingly, his decision to contact law enforcement to investigate and his involvement in any part of the investigation, including a conversation he had with one of the former employees, Mr. David Sammons, was completely unfounded and

potentially malicious. Pls.' Mem. in Support of Mot. for Summ. Jdgmt. at 1-19, ECF No. 181. Similarly, the decision to suspend the Reeveses (and later terminate Mrs. Reeves) based on this problematic investigation was improper and harmed the Reeveses.

These events culminated in the Reeveses filing an eleven-count complaint. Mr. Alexander and the WCBOE are two of seven named defendants in this case. Specifically, they are named in the following counts: (1) Civil Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983 (Count III); (2) Invasion of Privacy/False Light (Count VI); (3) Defamation (Count VII) (4) Intentional Infliction of Emotional Distress (Count VIII); (5) Discrimination/Retaliation for Ms. Reeves' Exercising Rights and Engaging in Conduct Protected Under the Family Medical Leave Act (Count IX); (6) Interference with Plaintiffs's [sic] Rights Under the FMLA (Count X); and (7) Constructive Discharge (Count XI). Plaintiffs moved for Summary Judgment against Defendant Alexander on Counts IV, V, VI, and VII.[2] ECF No. 181. Mr. Alexander and the WCBOE cross-filed their Motion for Summary Judgment (ECF No. 188) on all counts. The Motions are now briefed and ripe for resolution.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in

---

[2] Plaintiffs' Motion asks for summary judgment against the three defendants (including Todd Alexander) on the invasion of privacy, defamation, malicious prosecution, and abuse of process claims. Because Todd Alexander is only named in the invasion of privacy and defamation claims, this Opinion will only analyze Plaintiffs' grounds for summary judgment as to these two counts and only as to this Defendant.

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

### A. Count III: Civil Conspiracy

"To establish a conspiracy claim under § 1983, a plaintiff 'must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right.'" *Penly v. McDowell Cnty. Bd. of Educ.,* 876 F.3d 646, 658 (4th Cir. 2017) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 357-58 (4th Cir. 2014)). "This burden is 'weighty.'" *Id.* (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). "While they need not produce direct evidence of a meeting of the minds, [plaintiffs] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* (quoting *Hinkl*e, 81 F.3d at 421) The evidence "must, at least, reasonably lead to the inference that [the defendants]

positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* (alteration in original) (quoting *Hinkle*, 81 F.3d at 421).

Here, the record shows no direct evidence of a conspiracy involving either Defendant, and Plaintiffs appear to agree, noting only that circumstantial evidence is sufficient. Pls.' Resp. at 6, ECF No. 191. Because of the intracorporate conspiracy doctrine, which recognizes that a corporation cannot conspire with its agents, the conspiracy that must be proven by the record here must lie between Defendant Alexander and Deputy Sowards, or the WCBOE and Deputy Alexander.[3] *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (4th Cir. 2013).

Defendants claim that the Plaintiffs have failed to bear their burden by not producing evidence that could reasonably lead to the inference of a common plan or conspiracy. Defs.' Mem. at 3. Plaintiffs' proffered circumstantial evidence, with little to no citation to the record, essentially amounts to the following with respect to Mr. Alexander: that Mr. Alexander actually worked closely with Deputy Sowards in causing the investigation and subsequent criminal charge; that Mr. Alexander knew the bus garage parts room lacked a complete inventory of parts; and that Mr. Alexander ignored reports of Mr. Meddings' misbehavior and had Deputy Sowards focus the investigation on the Reeves. Pls.' Resp. at 7-11, ECF No. 191. Further, Plaintiffs claim that Defendant Alexander misrepresented material facts, causing their arrests and violating their constitutional rights in pursuing these allegations. *Id.* at 11.[4]

---

[3] Of course, the doctrine of respondeat superior does not apply to § 1983 claims. *See e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009). Plaintiffs have not alleged any actions by the WCBOE itself that would suggest its involvement in a conspiracy.

[4] Regarding Plaintiffs' constitutional claim regarding invasion of privacy under the First Amendment, the Court cannot find a cognizable claim stated against the Defendants. There is no recognized general right of privacy under the First Amendment. The Fourth Circuit has recognized a right to privacy capable of supporting a § 1983 claim under the auspices of the Fourth Amendment, but this protects "only information with respect to which the individual has a reasonable expectation of privacy." *See Payne v. Taslimi*, 998 F.3d 648, 655 (4th Cir. 2021)

The record evidence as to these claims is not sufficiently controverted to create a genuine issue of material fact to preclude summary judgment on this count. The record establishes that Mr. Alexander contacted law enforcement to investigate allegations of a break-in. Alexander Depo. at 225, ECF No. 188-6. The mere act of involving law enforcement to investigate a break-in is not sufficient circumstantial evidence from which to infer a conspiracy. *See Davis v. Walmart Stores E., L.P.*, 687 F. App'x 307, 311 (4th Cir. 2017) (per curiam) (granting motion to dismiss § 1983 claim where well-plead facts indicated nothing more than the occurrence of a single conversation between a law enforcement officer and the person reporting a suspected crime). However, even if he instigated the investigation by contacting law enforcement, there is nothing here to show that Defendant Alexander actually participated in pursuing the criminal charges against the Reeveses.

Even taken in the light most favorable to Plaintiffs, the evidence suggests at most that Defendant Alexander knew Defendant Meddings bore a grudge against Mr. Reeves and that the bus garage parts room lacked an accurate inventory of parts. Alexander Depo. at 15-20, 72-73 ECF No. 188-6; Ex. 9, ECF No. 181-9. Plaintiffs use these facts to essentially contend that Defendant Alexander, despite this knowledge, did not have Defendant Sowards "seriously investigate Defendant Meddings" and "had Defendant Sowards focus the investigation only on Mr. Reeves." Pls.' Resp. at 8. But there is no evidence that Mr. Alexander controlled the methods of the investigation, or its targets. Mr. Alexander occasionally spoke to Deputy Sowards and was present at one interview, with David Sammons (the former WCBOE Director of Transportation). Alexander Depo. at 247. Plaintiffs contend that the conversation was falsely

---

(quoting *Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990)). The Reeveses have no right to privacy against the information contained in public records, including arrests. *Id.* (internal citations and quotations omitted).

described in the criminal complaint that Deputy Sowards presented to the magistrate judge. Pls.' Resp. 11. But there is absolutely no record evidence that Mr. Alexander was involved in any way in pursuing the warrants or criminal complaints against the Reeveses resulting in a deprivation of their constitutional rights.

Further, Plaintiffs' conclusory assertions of conspiracy do not establish why or for what reason Mr. Alexander would conspire against the Reeveses, considering that he had barely a single conversation of substance with them and in fact had recently recommended Mr. Reeves for a promotion just a few months before the break-in. K. Reeves Depo. at 63-64, ECF No. 188-11; J. Reeves Depo. at 28, ECF No. 188-5. Of course, neither of these circumstantial pieces of evidence definitively prove that Mr. Alexander did not conspire to deprive Plaintiffs of their constitutional rights, but they matter in light of the fact that Plaintiffs have yet to produce any "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Penly*, 876 F.3d at 658 (quoting *Hinkle*, 81 F.3d 416, 421).

The Reeves's final suggestion is that the "timing of [their] arrests… is an additional fact that lends support for a finding of conspiracy." Pls.' Resp. 9. But the record evidence has not shown that Mr. Alexander was involved in the warrants or arrests against the Reeveses, much less that he controlled the timing. *See* Sowards Depo. at 158, ECF No. 188-7; Criminal Complaints, ECF Nos. 184-9, 184-15. Similarly, Mr. Alexander has not been shown to have had any contact with the Prosecuting Attorney's office prior to the Reeves' arrests. *See* Ex. 9, at 6-7. Taken alone, the mere fact that the Reeveses were arrested on the same day that one of them was scheduled to appear before the WCBOE is not sufficient to create a genuine issue of material fact about the existence of the supposed conspiracy in light of the rest of the record. *Cf. Wagner v.*

*Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993) ("[T]emporal proximity is, however, simply too slender a reed on which to rest a Section 1983 retaliatory discharge claim.").

B. Count VI: Invasion of Privacy/False Light

To state a false light invasion of privacy claim, West Virginia law requires plaintiff to prove:

> (1) [T]hat there was a public disclosure by the Defendant of facts regarding the Plaintiff; (2) that the facts disclosed were private facts; (3) that the disclosure of such facts is highly offensive and objectionable to a reasonable person of reasonable sensibilities; and (4) that the public has no legitimate interest in the facts disclosed.

*Davis v. Monsanto Co.*, 627 F. Supp. 418, 421 (S.D.W. Va. 1986) (quoting Restatement (Second) of Torts § 652D (Am. Law Inst. 1977)). Crucially, "publicity" means that "the matter is made public, by communicating it to the public at large." *Mays v. Marshall Univ. Bd. of Governors*, No. 14-0788, 2015 WL 6181508, at *6-7 (W. Va. Oct. 20, 2015) (memorandum opinion) (quoting Restatement (Second) of Torts § 652E cmt. a.).

Here, there is no record evidence that the Defendants communicated any facts about the Reeveses to the public at large. Both Mr. Reeves and Mrs. Reeves testified that they were not aware that Mr. Alexander had made any statements to members of the public about their suspension. J. Reeves Depo. at 121, ECF No. 188-26; K. Reeves Depo. at 150, ECF No. 181-2. Nothing else in the record has attributed the statements in the media to either Mr. Alexander or the WCBOE. There is no other proof that Mr. Alexander made public statements to anyone, aside from Mr. Alexander's personal communication of the suspension to the Reeveses, which occurred privately, via letter. *See* Ex. 16, ECF No. 188-16; Ex. 29, ECF No. 188-29. Further, when Mr. Reeves appeared before the WCBOE to contest his suspension, the WCBOE voted to

go into executive session to ensure that his privacy was respected. *See* Ex. 27 at 3-4. ECF No. 188-27.

Plaintiffs, in their own Motion for Summary Judgment, baldly state that "the evidence conclusively establishes the Defendants communicated to the Wayne County Community that they believed the Reeves had conspired to embezzle property and that Mr. Reeves had improperly taken bus garage parts." Pls.' Mem. at 27. Plaintiffs adduce in their response to Defendants' cross-motion that Mr. Alexander testified that "Wayne County is a small community, and that an accusation of a crime travels fast," making the news of the Reeves' suspension "substantially certain to be one of public knowledge." Pls.' Resp. at 15-16. Further, they note that Defendant Alexander did not limit his communications where he involved law enforcement in the investigation of the Reeveses. *Id.* at 16.

However, the fact that Wayne County is a small community does not suffice to prove publicity. The fact that mere publicity occurs does not suffice where there is no proof that defendants publicized false light information to the media or otherwise. *See Taylor v. West Virginia Dep't of Health and Hum. Res.*, 788 S.E.2d 295, 316 (W. Va. 2016) (affirming summary judgment because allegations that defendants "'unleashed' a 'maelstrom of publicity'" did not suffice where plaintiff could not provide a single example where defendants "publicized 'false light' information to the media or otherwise."). There is otherwise no evidence that these Defendants controlled the content or decision to publish articles regarding matters of public record.

Relatedly, contacting law enforcement to investigate an alleged break-in does not constitute as communication to the public as large.[5] *See e.g.*, *Curry v. Whitaker,* 943 N.E.2d 354,

---

[5] To the extent that Plaintiffs contend their suspension was a publicized communication,

360 (Ind. Ct. App. 2011)[6] (affirming a grant of summary judgment on false light claim because the fact that defendants filed police reports and sought assistance of at least two police officers to press charges against plaintiff could not be construed as communicating to the public at large); *Casselli v. City of Phila.* 54 F. Supp. 3d 368, 381 (E.D. Pa. 2014) (dismissing false light claim where "complaint merely allege[d] that [defendant] made false light statements to police officers rather than the public at large.").[7] Accordingly, summary judgment on this Count is granted as to both Defendants on this claim, and Plaintiffs' corresponding claim to summary judgment is denied.

C. Count VII: Defamation

In West Virginia, a claim for defamation requires a plaintiff to plead and prove the following elements: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiffs; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983).

Here, Plaintiffs are unable to establish multiple elements of the cause of action. As discussed regarding Plaintiff's earlier false light claims, there is no proven publication or communication. Regarding the defamation charge specifically, Plaintiffs suggest that their suspension, on its own, could constitute a defamatory statement "when taken in the context of

---

this will not support a claim as discussed below.
    [6] Like West Virginia, Indiana and Pennsylvania all look to the Restatement (Second) of Torts for guidance on the elements required to prove a false light invasion-of-privacy claim.
    [7] And even if the Court were to assume that these statements to law enforcement constituted communications to the public at large, they would almost undoubtedly be protected by qualified privilege. *See, e.g. Belcher v. Wal-Mart Stores*, 568 S.E.2d 19, 27 (W. Va. 2002) ("[A]ny statement made by an employer to law enforcement officials in the course of an investigation of criminal activity is privileged and provides no basis for a defamation suit, even assuming the accuracy of a plaintiff's allegations.) (internal citations and quotations omitted).

Defendant Alexander's communications to the public." Pls.' Resp. at 17. While it is true that West Virginia law recognizes that defamatory statements need not be direct, they still must be *statements*. *See Crump*, 320 S.E.2d at 77 (emphasis added).

Termination or suspension of employment is not, on its own, a statement constituting defamation. *See Wei-Ping Zeng v. Marshall Univ.*, No. 3:17-3008, 2019 WL 3973946 (S.D.W. Va. Aug. 22, 2019) ("No authority, in this Circuit or otherwise, suggests that merely terminating employment is a 'statement' that constitutes defamation.") It is not enough for a defamation claim to allege that one's termination is known throughout the community and that, ipso facto, the defendants must be responsible. *See Eddy v. Biddle,* No. 1:11CV137, 2013 WL 66929 at *12 (N.D.W. Va. Jan. 4, 2013); *Shawkey v. Lowe's Home Centers, Inc,* No. 2:09-CV-01264, 2011 WL 1229784 (S.D.W. Va. Mar. 30, 2011) at *9 (granting summary judgment where plaintiff's "argument essentially boil[ed] down to the proposition that [the employer] 'must have' spread the word that Plaintiff was fired for theft because of the speed in which 'everybody knew.'"). Accordingly, Plaintiffs have not pointed to any statements made by either Defendant Alexander or the WCC that constitute defamation and summary judgment must be awarded to Defendants on this count and denied to Plaintiffs.


D. Count VIII: Intentional Infliction of Emotional Distress

> To state a claim for intentional infliction of emotional distress, a plaintiff must establish: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl Pt. 3, *Travis v. Alcon Laby's, Inc.*, 504 S.E.2d 419 (W. Va. 1998). Whether conduct may reasonably be considered outrageous is a legal question for the trial court to determine. Syl. Pt. 4, *id*. To be considered outrageous the alleged conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Zsigray v. Langman*, 842 S.E.2d 716, 727 (W. Va. 2020) (internal quotation omitted).

Plaintiffs claim their claim on the tort of outrage is evidenced by the fact that "Defendants knew or should have known that the Reeves were innocent of the crimes they were accused of" yet caused the underlying criminal investigation to unfold, which has caused them substantial harm. Pls.' Resp. at 20. However, because Plaintiffs have failed to prove that these Defendants entered any sort of conspiracy to pursue false charges against them, their claim to this tort must also be denied.[8] There was nothing outrageous about Mr. Alexander's decision to contact law enforcement to investigate. *See Zsigray,* 842 S.E. 2d at 728 ("Seeking the assistance of law enforcement and the criminal justice system is not extreme and outrageous conduct as a matter of law."). Nor does suspension in light of a neutral magistrate's finding of probable cause for arrest constitute extreme and outrageous conduct.[9]

### E. Counts IX and X: FMLA Discrimination/Retaliation and FMLA Interference

An employer may not interfere with an employee's exercise of her right to take unpaid leave under the FMLA, nor discriminate against an employee for exercising or attempting to exercise this right. 29 U.S.C. § 2615(a)(1). An employee has a cause of action when she proves

---

[8] Insofar as Plaintiffs claim that their termination or the resulting defamation/invasion of privacy that stemmed from these constituted the basis of their emotional distress, summary judgment has been awarded against the Plaintiffs on these counts and so they will not support the intentional infliction of emotional distress claim either.

[9] And, in fact, Mrs. Reeves was reinstated with back pay when those criminal charges against her were dismissed. *See* Ex. 33, 188-33.

the employer interfered with her exercise of FMLA rights and thereby caused her prejudice. 29 U.S.C. § 2617; *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89 (2002).

Mrs. Reeves claims that the WCBOE and Defendant Alexander retaliated against her for taking FMLA leave and interfered with her FMLA rights. Such claims "are analogous to discrimination claims brought under Title VII." *Laing v. Fed. Express Corp*., 703 F.3d 713, 717 (4th Cir. 2013). Accordingly, retaliation claims based on circumstantial evidence are evaluated under the evidence under the familiar *McDonnell Douglas* framework. The first step in that framework requires a plaintiff to "establish a prima facie retaliation claim under the FMLA" by proving: "[1] 'that [she] engaged in protected activity, [2] that the employer took adverse action against [her], and [3] that the adverse action was causally connected to the plaintiff's protected activity.' " *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 191 (4th Cir. 2017) (quoting *Sharif v. United Airlines, Inc*., 841 F.3d 199, 203 (4th Cir. 2016)). "If the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, nonretaliatory reason for taking the employment action at issue." *Hannah P. v. Coats,* 916 F.3d 327, 347 (4th Cir. 2019) (citing *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 429 (4th Cir. 2015)). Once "the employer offers a non-retaliatory reason of the adverse action, the plaintiff [then] 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation.'" *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) (quoting *Yashenko v. Harrah's NC Casino Co., LLC,* 446 F.3d 541, 551 (4th Cir. 2006)).

Here, on December 23, 2019, Mrs. Reeves notified defendants that she required FMLA leave for her serious health condition. Am. Compl. ¶ 66; Defs.' Answer ¶ 66, ECF No. 71. This constitutes a protected activity. On January 29, 2020, Defendant WCBOE approved Mrs. Reeves for intermittent leave from October 1, 2019, to June 30, 2020. Am. Compl. ¶ 67, Defs.' Answer ¶

-13-

67. On February 6, 2020, hours before Mr. Reeves and his attorneys were to appear before the WCBOE to contest his suspension, the Reeves were arrested. The following day, Mrs. Reeves was placed on administrative leave and suspended without pay after February 25, 2020. *See* Exs. 29, 30, ECF Nos. 188-29, 188-30. This constitutes an adverse employment action. To demonstrate a causal connection, she points to the circumstances and timing of her dismissal, because just eight days after she received approval of her intermittent leave, she was suspended. Temporal proximity can create a causal inference where it is very close. *See Laing*, 703 F.3d at 720.

But even if Mrs. Reeves has stated her prima facie retaliation claim, Mr. Alexander and the WCBOE have met their burden of providing a legitimate, nonretaliatory reasons for taking the employment action at issue. *See Hannah P.*, 916 F.3d at 347. On February 6, 2020, Mrs. Reeves was arrested pursuant to a facially valid warrant and charged with a felony. *See* Arrest Warrant, ECF No. 184-26. To survive summary judgment, the burden shifts back to Mrs. Reeves to prove that this rationale is a "pretext for FMLA retaliation." *Vannoy*, 827 F.3d at 304 (internal citation omitted). Mrs. Reeves does nothing to address this contention, only arguing that she met the first step in her burden. Pls.' Resp. at 21-22.

But on the record, it is apparent that Mrs. Reeves cannot prove her pretext claim. Courts have considered "comparator evidence to be a particularly probative means for discerning whether a given adverse action was the product of a discriminatory motive." *Laing*, 703 F.3d at 719. "[W]here an employer adduces a nondiscriminatory reason for discharging the plaintiff and comparator evidence does not exist to rebut that explanation, the plaintiff must be able to point persuasively to some other form of evidence demonstrating that the employer's explanation was a mere pretext for discrimination." *Id*. at 720. Here, like in *Laing*, the only comparator evidence in

-14-

the record supports Defendants' nondiscriminatory explanation for why it terminated Mrs. Reeves, because Mr. Alexander, since becoming Superintendent in 2017, has suspended every WCBOE employee accused of or charged with a crime. *See* Ex. 42 at Ex. A, ECF No. 188-42.

While comparator evidence is not dispositive, the only other evidence Mrs. Reeves is left with is timing. "While timing is a relevant favor, it will rarely be independently sufficient to create a triable issue of fact." *Mercer v. Arc of Prince Georges Cnty., Inc*., 532 F. App'x 392, 397 (4th Cir. 2013) (citing *Simpson v. Off. of Chief Judge of Cir. Ct.,* 559 F.3d 706, 713 (7th Cir. 2009)). Without adducing further evidence, coincidental timing is insufficient to create a genuine issue of material fact regarding an employer's motivation. *See Sloop v. ABTCO, Inc.,* No. 5:96CV83V, 1998 WL 1169247, at *11 (W.D.N.C. Aug. 18, 1998); *see also Singleton v. Pilgrim's Pride Corp*., No. CV 3:15-4999-JFA, 2017 WL 2952970, at *2 (D.S.C. July 11, 2017) (same); *Queen v. Haywood Reg'l Med. Ctr. Med. Care Plan*, No. 1:12-CV-00306-MOC-DL, 2014 WL 4311030, at *7 (W.D.N.C. Aug. 29, 2014) (same). Accordingly, Defendants claims to summary judgment should be granted on both of Mrs. Reeves FMLA claims.

G. Count XI: Constructive Discharge

"To establish a constructive discharge claim, a plaintiff must show 'that [s]he was discriminated against by h[er] employer to the point where a reasonable person in h[er] position would have felt compelled to resign' and that she actually resigned." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)). *See also State Police v. Suders,* 542 U.S. 129, 14, (2004) ("A constructive discharge involves *both* an employee's decision to leave and precipitating conduct…." (emphasis added)); *Perkins v. Int'l Paper Co*., 936 F.3d 196, 212 (4th Cir. 2019) ("Second, a plaintiff must actually resign because of those conditions.") (internal citation omitted). Similarly, West Virginia law recognizes that an

employee must quit to claim constructive discharge. *See* Syl. Pt. 5, *Slack v. Kanawha Cnty. Hous. & Redev. Auth*., 423 S.E.2d 547 (W. Va. 1992).

Here, it is undisputed that Mr. Reeves has not yet been terminated or otherwise resigned. J. Reeves Depo. at 106-107. Mr. Reeves has agreed to continue his termination hearing indefinitely until the criminal charges against him had been resolved and still receives health insurance benefits from the Board of Education. *Id*. at 107-108; Transcript of Proceedings before WCBOE at 26-27, ECF No. 188-27. He remains on unpaid suspension. *See* Ex. 28, ECF No. 188-28. Because Mr. Reeves cannot prove the second element of a constructive discharge action, the Defendants are entitled to summary judgment with respect to this Plaintiff on this claim.

Mrs. Reeves, however, has been terminated by the WCBOE. K. Reeves Depo. at 193. Mrs. Reeves was reinstated with backpay when the charges were dropped against her. *See* Ex. 33, ECF No. 188-33. She has not resigned from the WCBOE. *See* Ex. 35 ¶ 22-24, ECF No. 188-35. She was instead eventually terminated, six months after filing her original complaint. K. Reeves Depo. at 22, 194. The termination was allegedly because of her failure to complete the necessary requirements to maintain her certification as a bus driver and report for work. *See* Ex. 34, ECF No. 188-34. This means she has not resigned, the action that is necessary for the very core of a constructive discharge claim. *See* W. Va. Code Ann. § 18A-2-6.

## IV. CONCLUSION

For the reasons herein, Defendants' Motion for Summary Judgment (ECF No. 188) is **GRANTED** and Defendants are **DISMISSED** from the action. Accordingly, Plaintiffs' Motion for Summary Judgment (ECF No. 181) is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          December 2, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE