IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KATRINA REEVES and
JAMES LEE REEVES,

                Plaintiffs,

v.                                        CIVIL ACTION NO.   3:20-0423

HOWARD MEDDINGS, individually; and
DEPUTY HARRY SOWARDS, individually,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Ms. Katrina Reeves's Motion to Substitute Herself as Party Plaintiff for James Lee Reeves, Decedent. ECF No. 298. For the following reasons, the Motion is **DENIED**, in part, and **GRANTED**, in part.

**I. BACKGROUND**

This case has evolved out of an alleged break-in at a Wayne County Board of Education ("WCBOE") bus garage in Fall 2019 and a subsequent investigation. *See* Am. Compl. ¶¶ 34-35, ECF No. 21. There are few undisputed facts. Plaintiffs Katrina and James Lee Reeves were employees of WCBOE for almost twenty years. Am. Compl. ¶¶ 18–23. Defendant Howard Meddings was a coworker of Mr. Reeves, employed as parts supervisor at the WCBOE garage. *Id*. ¶ 10. Mr. Reeves and Mr. Medding did not have an amicable relationship. *See* Mem. Op. & Order at 2, ECF No. 295 (discussing their relationship). After the alleged break-in at the garage,

WCBOE contacted the Wayne County Sheriff's Office to investigate. Am. Compl. ¶ 37. Defendant Deputy Harry Sowards took the lead in the investigation. *Id*. The Plaintiffs have alleged, in essence, that Mr. Meddings improperly influenced Deputy Sowards's investigation, first by informing WCBOE supervisor Todd Alexander that Mr. Reeves was stealing from their employer, and second, by allegedly spreading false information throughout the investigation to lead to the arrests of the Reeveses. *See e.g., id*. ¶¶ 41, 49, 61, 65. They have further alleged improper investigative behavior by Deputy Sowards. *See e.g., id*. ¶¶ 36, 50-52.

The investigation led to criminal charges against the Reeveses. *See* Criminal Compls., ECF Nos. 181-23 & 181-24. While other counts against the Reeveses were dismissed, Mr. Reeves was indicted by a grand jury for embezzlement. *See* Indictment, ECF No. 181-27; Criminal J. Orders, ECF Nos. 184-32 & 184-33. Due to the criminal charges, Mr. Reeves was placed on unpaid suspension. Am. Compl. ¶ 86. Ms. Reeves was also suspended, and later terminated. *Id*. ¶¶ 58, 72. News of their suspension and criminal charges appeared in local newspapers. *See id*. ¶¶ 74-75.

The Plaintiffs filed an eleven-count complaint against seven named defendants; two defendants remain active in the case. Out of the eleven counts brought in the Amended Complaint, only four remain as to Mr. Reeves and the remaining Defendants: Count I – Violation of Civil Rights Under 42 U.S.C. § 1983, Count III – Civil Conspiracy Under 42 U.S.C. § 1983, Count VII – Defamation, and Count VIII – Intentional Infliction of Emotional Distress (IIED). *See* ECF Nos. 295 & 296. Unfortunately, on November 27, 2021, Mr. Reeves unexpectedly passed away. Mot. to Substitute, ECF No. 298. Following his death, his widow moved to substitute herself as a party plaintiff for Mr. Reeves. *Id*. The Court has twice ordered briefing identifying claims that survive Mr. Reeves's death, and the parties have filed briefs accordingly. ECF Nos. 308, 314-316, 318, 333-337.

## II. LEGAL STANDARD

At the time of his death, Mr. Reeves was pursuing both state common law and federal law tort claims brought under 42 U.S.C. § 1983. At common law, personal injury torts did not survive death. West Virginia has modified the common law by statute, providing that:

> In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

W. Va. Code § 55-7-8a(a). Accordingly, if a claim would have been extinguished at common law, it can only survive if it can be categorized as an injury to real or personal property, an injury to the person not resulting in death, or deceit or fraud. *Id.*; *see Finney v. MIG Capital Management, Inc.*, 2014 WL 1276159 at *5 (S.D.W. Va. Mar. 27, 2014) (citing *Stanley v. Sewell Coal Co.*, 285 S.E.2d 679, 683 (W.Va. 1981)). Furthermore, the Supreme Court of Appeals of West Virginia has held that § 55-7-8a is to be read *in pari materia* with West Virginia's limitation of action statute, § 55-2-12, as they "were adopted as part of a common plan." *Sewell*, 285 S.E.2d at 682 (quoting *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 244 S.E.2d 321, 324 (W. Va. 1978)). Under § 55-2-12, all torts take either a one- or two-year statute of limitations. If a tort survives death pursuant to § 55-7-8a, then the two-year statute of limitations applies. § 55-2-12; *see id.* at 683.

Federal law does not cover the survivability of actions brought pursuant to 42 U.S.C. § 1983. *Robertson v. Wegmann*, 436 U.S. 584, 589 (1978). Rather, the law of the forum state governs their survival, subject to the caveat that application of state law does not offend the federal policy undergirding § 1983. *Id*. Where state law provides no specific guidance, courts determine survivability by examining the most analogous state-tort underlying a particular § 1983 claim. *Carey v. Piphus*, 435 U.S. 247, 258 (1978); *Ray v. Cutlip*, 2014 WL 858736 at *2 (N.D.W. Va.

Mar. 5, 2014). Accordingly, West Virginia law will govern the survivability of Mr. Reeves's claims. West Virginia law does not explicitly prescribe nor proscribe survival of § 1983 actions. Therefore, survival of Mr. Reeves's civil conspiracy claim will turn on the survivability of the closest state-tort analogs to the tortious conduct Plaintiff has alleged. *See Carey*, 435 U.S. at 258.

### III. DISCUSSION

#### A. Count VII: Defamation

As a preliminary matter, the Court **FINDS** that Mr. Reeves's defamation claim did not survive his death. The Supreme Court of Appeals of West Virginia has held that defamation claims do not survive a party's death, pursuant to West Virginia Code § 55–7–8a. *Snodgrass*, 244 S.E.2d at 325 ("[T]he Legislature intended to exclude for statutory survivability . . . other personal tort actions such as defamation"); *accord Butcher v. Lincoln Journal, Inc.*, 2012 WL 112546 at *2 (S.D.W. Va. Jan. 12, 2012) ("Because defamation is excluded from statutory survivability under [West Virginia Code] § 55–7–8a, defamation takes the one-year statute provided by § 55–2–12 and does not survive [Plaintiff's] death."). Accordingly, Ms. Reeves's Motion to Substitute Herself as a Party to Count VII is **DENIED**.

#### B. Counts I & III: 42 U.S.C. § 1983 Claims

In Counts I-III of the Amended Complaint, Mr. Reeves has alleged violations of his First, Fourth and Fourteenth Amendment rights and civil conspiracy to violate those rights under 42 U.S.C. § 1983. Count I is brought against Mr. Sowards, Count II has been dismissed, and Count III is brought against all Defendants. Am. Compl. ¶¶ 88-113; *see* Mem. Op. & Order, ECF No. 296; Order, ECF No. 339. Accordingly, the Court now considers the survivability of Counts I and II as brought against Defendants Sowards and Meddings.

### a. Parties' Characterization of the § 1983 Claims

As discussed above, in West Virginia the survivability of § 1983 claims is determined via an examination of the survivability of the closest state-tort analogs. *See Carey*, 435 U.S. at 258. In her Opening Memorandum Identifying Claims that Survive her husband's death, Ms. Reeves asserts that the closest state-tort analogs to the conduct Mr. Reeves alleged in his § 1983 civil conspiracy claim are "personal injuries" as categorized by West Virginia's survival statute, and therefore survive his death. Pl.'s Opening Mem. at 3-6 (citing W. Va. Code §§ 55-7-8a, 55-2-12; *Roberts v. Rowe*, 89 F.R.D. 398 (S.D.W. Va. 1981)), ECF No. 314. In Response, Defendants argue that the closest state-tort analogs to Mr. Reeves's claims are invasion of privacy, false arrest and imprisonment, and malicious prosecution, none of which would survive under West Virginia law. Def. Meddings Resp. to Pls.' Opening Mem. at 3 (citing *Myers v. City of Charleston*, 2020 WL 6702034 at *3 (S.D.W. Va. Nov. 13, 2020)), ECF No. 315; Def. Sowards' Resp. to Pl.'s Opening Mem. at 3-8 (citing *Snodgrass*, 244 S.E.2d at 325), ECF No. 316. In Reply, Plaintiff emphasizes that courts should construe § 1983 liberally, and that this Court should find that a § 1983 claim can survive a plaintiff's death when the abuse of an official's power caused the plaintiff's severe emotional distress. Pl.'s Reply to Defs.' Resp. Mem. at 5-6, ECF No. 318. In other words, Plaintiff appears to argue that this Court should find that IIED survives at West Virginia common law, and it is IIED which is the closest state-tort analog for Mr. Reeves's § 1983 claim. *See id*.

After the Court requested further briefing,[1] Plaintiff adjusted her argument, asserting that Mr. Reeves's § 1983 claim should be interpreted as—or as most analogous to—a West Virginia

---

[1] Parties are correct in noting that this case has been extensively briefed over several years. *See, e.g.*, Br. of Pl. in Supp. of Viability at 2, ECF No. 334. The most recent spate of briefing was directed after a successful interlocutory appeal by Defendant Meddings and subsequent mandate

constitutional claim for violation of his liberty interests. Br. of Pl. in Supp. of Viability of § 1983 Conspiracy and Outrage Claim at 2-4 (citing *Waite v. Civil Serv. Comm'n*, 241 S.E.2d 164 (1977); *W. Va. Dept. of Ed. v. McGraw*, 800 S.E.2d 230 (2017)), ECF No. 334. In Response, Defendants reiterate their earlier arguments as to which non-viable state-tort analogs should apply. Def. Meddings's Resp. to Opp'n to Br. of Pl. in Supp. of Viability at 2-3, 5, ECF No. 335; Def. Sowards's Resp. to Pl.'s Opening Mem. at 3-7, ECF No. 336. Further, the Defendants refute Plaintiff's argument concerning West Virginia constitutional law by noting that (1) Plaintiff does not address potentially more analogous torts; (2) Mr. Reeves did not assert a West Virginia constitutional tort; (3) in the alternative, a West Virginia constitutional tort's survivability would be analyzed and extinguished in the same manner as a § 1983 claim. Def. Meddings's Resp. to Opp'n to Br. of Pl. in Supp. of Viability at 4; Def. Sowards's Resp. to Pl.'s Opening Mem. at 5-6. In Reply, Plaintiff pivoted, asserting a state constitutional violation premised on a property—rather than a liberty—interest. Reply Br. at 1-4, ECF No. 337.

b. Analysis

As enumerated above, the parties in this case have alleged, variously, that the closest state-tort analogs to Mr. Reeves's § 1983 claims are (1) invasion of privacy, (2) false arrest and imprisonment, (3) malicious prosecution, or (4) a West Virginia constitutional violation—either based in a violation of Mr. Reeves's liberty or property interests. Invasion of privacy, false arrest and imprisonment, and malicious prosecution do not survive the death of a party in West Virginia. *Wilt v. State Auto. Mut. Ins. Co.*, 506 S.E.2d 608, 613-14 (W. Va. 1998). In its § 1983 counts, the

---

from the Fourth Circuit. *See* Fourth Circuit Court of Appeals Op., ECF No. 325; Order, ECF No. 333.

Amended Complaint alleges that Defendants violated Mr. Reeves's First, Fourth, and Fourteenth Amendment rights by:

- "[I]nvestigating and *causing a criminal complaint to issue* for the arrests of the Reeves [which] lacked probable cause and/or reasonable suspicion …. [violating their rights] to be secure in their persons, *free from unreasonable detention, search, and seizure, and to bodily security and personal privacy.*" Am. Compl. ¶ 91 (emphasis added).

- "[U]nreasonable and excessive detentions" *Id*. ¶ 92.

- Instituting "customs and practices concerning criminal investigations" which violated those rights. *Id*. ¶ 101.

- "…*issu[ing] and pursu[ing] criminal charges* against the Reeves without probable cause and/or reasonable suspicion and then *disseminating such information* to a news outlet." *Id*. ¶ 102 (emphasis added).

- "…perpetuat[ing] a custom and/or practice of operation that deprived the Reeves . . . of their constitutional rights *to be free from an arrest without probable cause, an unreasonable search and seizure, and violation of their privacy and security.*" *Id*. ¶ 104 (emphasis added).

- Taking actions which "resulted in the unreasonable, improper, illegal, and *unconstitutional detention, search and seizure* of Plaintiffs' persons as well as violations of their *rights to privacy and freedom from unreasonable search, seizure, arrest and prosecution.*" *Id*. ¶ 108 (emphasis added).

- Having "customs and practices *concerning criminal investigations*" which were "deliberately indifferent and taken with callous disregard" of the Reeveses' rights. *Id*. ¶ 109 (emphasis added).

- "[P]ermitting, ratifying and/or encouraging *the issuance and pursuit of criminal charges* against the Reeves without probable cause and/or reasonable suspicion." *Id*. ¶ 110 (emphasis added).

- Depriving Plaintiffs "of their constitutional rights to be free from an arrest without probable cause, an unreasonable search and seizure, and violation of their privacy and security, as well as their First Amendment rights to be free from unreasonably [sic] intrusion into their privacy and/or false depiction in their community." *Id*. ¶ 112.

Furthermore, prior filings from Plaintiffs have emphasized that their claims are most analogous to invasion of privacy, false arrest and imprisonment, and malicious prosecution. For example, in their Response to now-dismissed Defendants WCBOE and Todd Alexander's Motion for Summary Judgment, Plaintiffs' argument concerning their § 1983 conspiracy claim characterized Defendants as having "had a *single objective* to accuse the Reeves of embezzlement and pursue criminal charges against them when they knew such were meritless." Pls.' Resp. to Defs. WCBOE & Alexander's Mem. for Summ. J. at 7, ECF No. 191 (emphasis added, capitalization altered). That Response further alleged that the constitutional violations consisted of a "plan to level, investigate, and pursue false allegations of crimes against the Reeves." *Id*. In support of this argument, Plaintiffs alleged that their arrests and indictments lacked probable cause. *Id*. at 10-11. Furthermore, the briefing argued at length that Plaintiffs had successfully "established their false light claims against Defendants" when defending that tort (which was later dismissed by the Court). *Id*. at 15-17; *see* Mem. Op. & Order, ECF No. 296.

Again, in their Responses to Defendant Meddings and Defendant Sowards[2] Motions for Summary Judgment, Plaintiffs characterized the tortious conduct underlying their § 1983 claims

---

[2] Mr. Sowards filed a Motion for Summary Judgment with now-dismissed Defendants Wayne

as comparable to invasion of privacy, false arrest and imprisonment, and malicious prosecution. The Response to Mr. Meddings's Motion characterizes Defendants' unconstitutional behavior as "pursu[ing] false allegations against the Reeves that culminated in all their arrests," "allowing and/or spreading false allegations to result in the arrest of another," and "falsely accusing someone of crimes and publishing lies about a person in the community . . . in violation of a person's constitutional rights to privacy." Pls.' Resp. in Opp'n to Def. Meddings' Mot. for Summ. J. at 6-7, ECF No. 198. In their Response to Mr. Sowards's Motion, Plaintiffs allege, *inter alia*, that the Defendant "obtained a search warrant under false pretenses," was responsible for a "criminal investigation against the Reeves [which] was reckless and malicious," and "misstated witness testimony and omitted material facts to a grand jury to obtain probable cause." Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. 4, 7-8, ECF No. 197. These are not the only instances in which Plaintiffs characterize these claims in this manner; instances of similar allegations pervade the record before the Court.

This lengthy recitation of Plaintiffs' allegations demonstrates that Mr. Reeves's asserted constitutional violations are grounded in the allegedly improper investigation, detention, and prosecution of the Reeveses, and in the dissemination of information concerning those actions to the community. First, the Court finds that malicious prosecution is the nearest state-tort analog to the majority of Mr. Reeves's allegations brought in his § 1983 claims. In West Virginia, the elements for malicious prosecution are "(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious." *Hamstead*, 2022 WL 856610 at *6 (quoting Syl. Pt. 3, *Truman v. Fidelity & Casualty Co. of New York*, 123 S.E.2d 59

---

County Commission and Richard Thompson. ECF No. 185.

(W. Va. 1961)). As demonstrated above, Mr. Reeves repeatedly alleges that Defendants prosecuted him maliciously and without probable cause. *See, e.g.*, Am. Compl. ¶ 110; Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. 4, 7-8. The tort of malicious prosecution does not survive the death of a party in West Virginia. *Wilt*, 506 S.E.2d at 613. Accordingly, the Court concludes that Mr. Reeves has alleged tortious conduct which was extinguished by his death. *See Carey*, 435 U.S. at 258.

Second, the Court finds that Mr. Reeves has alleged additional tortious conduct most analogous to "invasion of privacy." Under West Virginia law, "invasion of privacy" occurs when there is "(1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." *Hamstead v. Harvey*, 2022 WL 856610 at *5 (W. Va. Mar. 23, 2022) (citing Syl. Pt. 11, *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751 (W. Va. 2014)). Furthermore, "[a]n invasion of privacy claim requires communication of facts related to one's 'private life.'" *Id*. Mr. Reeves alleges an unreasonable intrusion into his privacy by placing his name in a "false light" before his community via the publication of information concerning his arrest. *See, e.g.*, Am. Compl. ¶ 112; Pls.' Resp. to Defs. WCBOE & Alexander's Mem. for Summ. J. at 15-17. This tort, too, abates in West Virginia. *Slack v. Kanawha Cnty. Hous. & Redevelopment Auth.*, 423 S.E.2d 547, 551 (W.Va. 1992) ( "[I]nvasion of privacy is a personal action that does not survive the death of the individual at common law or under [section] 55–7–8a(a).").

Finally, some of Mr. Reeves's § 1983 claims allege tortious conduct most analogous to false arrest or false imprisonment under state law. In West Virginia, the torts of false arrest and false imprisonment overlap and are legally recognized as a singular tort. *Knotts v. Knotts*,

2012 WL 3045682 at *4 (W. Va. Apr. 13, 2012) (citing *Wallace v. Kato*, 549 U.S. 384 (2007)). Also known as "false detention," the tort requires "(1) the detention of the person, and (2) the unlawfulness of the detention and restraint." *Riffe v. Armstrong*, 477 S.E.2d 535, 552 (W. Va. 1996) *overruled on other grounds*, *Moats v. Preston Co. Comm'n*, 521 S.E.2d 180, 187 (W. Va. 1999); *Woods v. Town of Danville, W. Va.*, 712 F. Supp. 2d 502, 511-12 (S.D.W. Va. 2010). The Amended Complaint expressly alleges "unlawful detention" repeatedly, in which Mr. Reeves was allegedly falsely arrested for theft. *See, e.g.*, Am. Compl. ¶¶ 91-92. Interpreting repeatedly alleged "unlawful detention" as inapposite to the tort of "false detention" would be absurd. The Supreme Court of Appeals of West Virginia has held that this tort does not survive a claimant's death. *Wilt*, 506 S.E.2d at 613.

However, for the first time in this multi-year saga, Plaintiff asserts in her Brief in Support of Viability and her Reply that Mr. Reeves is claiming a state constitutional violation, or, perhaps an near-analog to a state constitutional violation. In the initial Brief, this is characterized by Plaintiff as a liberty interest violation, while in her Reply Plaintiff characterizes the alleged conduct as a property interest violation. *Compare* Br. of Pl. in Supp. of Viability at 2-4 *with* Reply Br. of Pl. in Supp. of Viability at 3-5. Unfortunately for Ms. Reeves, even if this Court were to find that the most analogous state law tort were a state constitutional violation, analysis of the survivability of that tort would very likely require an identical examination of the survivability of analogous state common-law torts. *See Ray*, 2014 WL 858736 at *3.

In *Ray v. Cutlip*, the Northern District of West Virginia held that, in the absence of any "specific guidance regarding the survivability of state constitutional tort claims and no reported West Virginia decision discuss[ing] the issue," it would analyze survivability "in the same manner as a federal constitutional tort claim: by reference to the most closely analogous state common-

law torts." *Id*. Since that decision, this Court has analyzed the survivability of a tort action brought under Article III, Section 6 of the West Virginia Constitution by determining the survivability of the tort's state common-law analog. *Myers v. City of Charleston*, 2020 WL 4195005 at *10-11 (S.D.W. VA. July 21, 2020). *Myers* premised its analysis on general principles of survivability previously announced by the Supreme Court of Appeals of West Virginia, including its analysis of the state's survival statute and the types of actions previously found not to survive a party's death. *Id*. Accordingly, this Opinion adopts the reasoning in *Ray v. Cutlip* and *Myers*, and would apply the federal standard in analyzing survivability of a state constitutional tort claim—i.e. apply the survivability of the most analogous state common-law tort. Therefore, if the Court were to find that the Amended Complaint alleges tortious conduct most analogous to a state constitutional tort, then this Opinion would cycle back around to the analysis of state common law analogs above, merely charting a detour through the West Virginia Constitution in an exercise in futility.

In conclusion, none of the nearest state-tort analogs identified above survives a party's death under West Virginia law. *See Snodgrass*, 244 S.E.2d at 325. Accordingly, Mr. Reeves's § 1983 claims are extinguished by his death. *See Carey*, 435 U.S. at 258. The Court **DENIES** Ms. Reeves's Motion to Substitute Herself as Party Plaintiff for Mr. Reeves as to Counts I and III.

### C. Count VIII: Intentional Infliction of Emotional Distress ("IIED")

At the time of his death, Mr. Reeves was also pursuing an IIED claim against Defendants. *See* Am. Compl. ¶¶ 153-59. Unlike the state-tort analogs discussed above, the Supreme Court of Appeals of West Virginia has not expressly announced whether IIED survives a party's death under § 55-7-8a.

To reiterate, West Virginia determines the survivability of tort actions by looking to see whether a tort fits within four categories enumerated in its survival statute. This survival statute

was passed in tandem with the statute governing the statute of limitations, and the statutes should be read *in pari materia*. *Snodgrass*, 244 S.E.2d at 324. To determine the statute of limitations under § 55-2-12, the Supreme Court of Appeals has consulted the survival statute's categorization of torts. *See, e.g.*, *Sewell*, 285 S.E.2d at 682. If a tort is extinguished by the death of a party pursuant to West Virginia Code § 55-7-8a, it has a one-year statute of limitations under West Virginia Code § 55-2-12. Conversely, if the tort survives the death of a party, it carries a two-year statute of limitations. *See id*. The Supreme Court of Appeals of West Virginia has found that IIED has a two-year statute of limitations § 55-2-12(b), in part by determining that IIED is a "personal injury" pursuant to § 55-7-8a. *See* Syl. Pt. 5, *Courtney v. Courtney*, 437 S.E.2d 436, 437 (W. Va. 1993); *see Vogt v. Macys Retail Holdings, Inc.*, 2020 WL 13094072 at *5 (N.D.W. Va. Dec. 10, 2020).

Accordingly, Plaintiff has argued that Mr. Reeves's IIED claim should survive pursuant to the Supreme Court of Appeals' decision in *Courtney v. Courtney*. Pl.'s Opening Mem. at 3, 5. In response, Defendants have argued variously that IIED simply does not survive death under West Virginia law[3] or that, unlike in *Courtney*, an IIED claim should not survive death where the underlying tort and conduct it is based on does not. *See* Def. Meddings' Resp. to Pl.'s Opening Mem. at 5; Def. Sowards's Resp. to Pl.'s Opening Mem. at 8-9. In *Courtney*, the plaintiff brought a claim of IIED stemming from assault and battery. 437 S.E.2d at 437. The Court overruled earlier caselaw to find that a claim for "severe emotional distress" constituted a "personal injury," and therefore was subject to a two-year statute of limitations pursuant to § 55-2-12. *Id* at 442-43

---

[3] Defendant Meddings makes this claim in his Response to Plaintiffs' Opening Memorandum. ECF No. 315 at 5. In doing so, he quotes *Myers v. City of Charleston* as stating that a claim for IIED must be dismissed as it does not survive a plaintiff's death. 2020 WL 6702034 at *3 (S.D.W. Va. Nov. 13, 2020). The Court finds *Myers* to be inapposite—and the citation to be a bit disingenuous—as the case dealt with an injury *resulting* in death, not the issue of whether an injury not resulting in death then survived a party's death. *See id*. at 3-4 ("As the statute establishes in no uncertain terms, causes of action for injuries to the person and resulting in death do not survive.")

(overruling *Funeral Servs. by Gregory v. Bluefield Hospital*, 413 S.E.2d 79 (W. Va. 1991)). In doing so, the Supreme Court discussed § 55-7-8a. *Id*. at 441-42. While *Courtney* has been widely applied to find that IIED carries a two-year statute of limitations, see, e.g., *Vogt*, 2020 WL 13094072 at *5, this Court is unaware of a case which has applied the *Courtney* holding in determining survivability of an IIED claim.

The Court is persuaded by Plaintiff's reasoning. While the Supreme Court of Appeals of West Virginia has yet to speak to the issue of IIED's survivability directly, the reasoning in *Courtney* relied upon interpretation of the survival statute in order to find IIED's two-year statute of limitations. 437 S.E.2d at 442. As discussed, a two-year statute of limitations under § 55-2-12 generally connotes survivability under § 55-7-8a. *See Sewell*, 285 S.E.2d at 682. Furthermore, *Courtney* contains a lengthy consideration of whether IIED could constitute a "personal injury" for the purposes of the sister statutes and found in the affirmative. 437 S.E.2d at 442. This discussion expressly adopted "the modern view" that IIED neither requires physical injury nor is dependent upon other torts. *Id*. at 440-41. While the statute of limitations was at issue in *Courtney*—not the issue of survivability—the Supreme Court's finding that IIED is a "personal injury" for the purposes of that statute logically entails a determination that IIED survives under West Virginia's sister-statute provision for the survival of "personal injuries." Additionally, the *Courtney* decision emphasized § 55-7-8a's usage of the term "personal injury" rather than "physical injury," finding the distinction to be dispositive: "It is too late in the day medically to say that recognizable mental or emotional injuries that arise from severe emotional distress are not injuries to the person. A cause of action for such injuries takes a two-year statute of limitations not because it did or did not survive at common law, but because it is a species of personal injury

[pursuant to § 55-7-8a]." *Id*. at 442. Accordingly, the Court **GRANTS** Ms. Reeves's Motion to Substitute Herself as Party Plaintiff for James Lee Reeves as to Count VIII.

## IV. CONCLUSION

Accordingly, Ms. Katrina Reeves's Motion to Substitute Herself as Party Plaintiff for James Lee Reeves, Decedent (ECF No. 298) is **DENIED**, as to Counts I, III, and VII, and **GRANTED**, as to Count VIII. Additionally, Defendant Howard Meddings's Motion to Set Hearing on Issue of the Survivability of the Claims of Plaintiff James Lee Reeves (ECF No. 330) is **DISMISSED** as moot. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:   February 10, 2023

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE