IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KATRINA REEVES and
JAMES LEE REEVES,

           Plaintiffs,

v.                                CIVIL ACTION NO.   3:20-0423

HOWARD MEDDINGS, individually; and
DEPUTY HARRY SOWARDS, individually,

           Defendants.

## MEMORANDUM OPINION AND ORDER

Pursuant to the Fourth Circuit Court of Appeals Opinion and Mandate (ECF Nos. 325 & 328), the Court must determine whether Defendant Howard Meddings is entitled to federal qualified immunity as to Plaintiff Katrina Reeves's Count III – Civil Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983 claim. Mr. Meddings initially asserted this entitlement in his Motion for Summary Judgment. ECF No. 182. For the following reasons, the Court **DENIES** the Motion.

## I. BACKGROUND

This case has evolved out of an alleged break-in at a Wayne County Board of Education ("WCBOE") bus garage in Fall 2019 and a subsequent investigation. *See* Am. Compl. ¶¶ 34-35, ECF No. 21. There are few undisputed facts. Plaintiffs Katrina and James Lee Reeves were employees of WCBOE for almost twenty years. Am. Compl. ¶¶ 18–23. Defendant Howard Meddings was a coworker of Mr. Reeves, employed as parts supervisor at the WCBOE garage.

*Id.* ¶ 10. Mr. Reeves and Mr. Meddings did not have an amicable relationship. *See* Mem. Op. & Order at 2, ECF No. 295 (discussing their relationship). After the alleged break-in at the garage, WCBOE contacted the Wayne County Sheriff's Office to investigate. Am. Compl. ¶ 37. Defendant Deputy Harry Sowards took the lead in the investigation. *Id*. The Plaintiffs have alleged, in essence, that Mr. Meddings improperly influenced Deputy Sowards's investigation, first by informing WCBOE supervisor Todd Alexander that Mr. Reeves was stealing from their employer, and second, by allegedly spreading false information throughout the investigation to lead to the arrests of the Reeveses. *See e.g.*, *id*. ¶¶ 41, 49, 61, 65. They have further alleged improper investigative behavior by Deputy Sowards. *See e.g.*, *id*. ¶¶ 36, 50-52.

The investigation led to criminal charges against the Reeveses. *See* Criminal Compls., ECF Nos. 181-23 & 181-24. While other counts against the Reeveses were dismissed, Mr. Reeves was indicted by a grand jury for embezzlement. *See* Indictment, ECF No. 181-27; Criminal J. Orders, ECF Nos. 184-32 & 184-33. Due to the criminal charges, Mr. Reeves was placed on unpaid suspension. Am. Compl. ¶ 86. Ms. Reeves was also suspended, and later terminated. *Id*. ¶¶ 58, 72. News of their suspension and criminal charges appeared in local newspapers. *See id*. ¶¶ 74-75.

The Plaintiffs filed an eleven-count complaint against seven named defendants, although only two defendants remain active in the case. On November 19, 2021, this Court denied Mr. Meddings's Motion for Summary Judgment, denying his claims of both state and federal qualified immunity. ECF No. 295. On December 14, 2021, Mr. Meddings filed an interlocutory appeal. ECF No. 301. The Fourth Circuit Court of Appeals affirmed this Court's denial of Mr. Meddings's state qualified immunity but found that the Court did not properly apply the standard for federal qualified immunity to Mr. Meddings's case. ECF No. 325 at 12, 16. Accordingly, the Court of Appeals vacated this Court's judgment to the extent it denied Mr. Meddings's Motion for

Summary Judgment as to the Reeveses' § 1983 conspiracy claim based on federal qualified immunity. *Id*. at 16.

Unfortunately, Mr. Reeves died during litigation, and the Court dismissed most counts as to his claims. *See* ECF No. 340. Out of the eleven counts brought in the Amended Complaint, only one federal count remains as to Ms. Reeves and Mr. Meddings: Count III – Civil Conspiracy Under 42 U.S.C. § 1983. *See* ECF Nos. 295 & 325. Ms. Reeves's Motion to substitute herself for her deceased husband as to Count III was denied. *See* ECF No. 340. Accordingly, the Court ordered supplemental briefing on February 13, 2023 as to the remaining issues, which Mr. Meddings and Ms. Reeves subsequently filed. ECF Nos. 342-45.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a

showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). And yet, if a public official engages in conduct "that is entirely beyond [their] discretionary authority," then they are not protected by this immunity. *See In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997).

When an official is acting within the scope of their authority, the court must conduct a two-step analysis. *Pearson*, 555 U.S. at 232. First, the court must determine whether the record supports a violation of a constitutional right. *Id.* Second, the court must determine whether the right was "clearly established at the time of defendant's alleged misconduct." *Id.* (internal quotation marks and citation omitted). To be considered clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). In other words, the "clearly established" standard is satisfied when "existing precedent" puts the constitutional question "beyond debate," such that officials can "reasonably anticipate when their conduct may give rise to liability." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up).

### A.  The Scope of Mr. Meddings's Discretionary Authority

As an initial matter, the Fourth Circuit questioned whether Mr. Meddings was acting within the scope of his discretionary authority when he allegedly "obtain[ed] records from a search of James Reeves's cell phone from Sowards, participat[ed] in some manner in the search of the Reeveses' home and instruct[ed] bus garage employees not to cooperate with the investigation." 4CCA Order at 15-16. The Appellate Court pointed to *In re Allen*'s analysis of the "rare[]" case in which a defendant's conduct is so "totally beyond the scope of his authority" that he is not protected by qualified immunity. *Id*. (citing *In re Allen*, 106 F.3d at 594, 595 n.4). Despite this directive from the Fourth Circuit, neither party appears to have addressed the issue of whether Mr. Meddings was acting "totally beyond the scope of his authority" when he allegedly maliciously interfered in the investigation. Accordingly, the Court considers the issue without the assistance of briefing.

The *Allen* Court held as a matter of first impression that a public official who performs an act clearly established to be beyond the scope of their discretionary authority is not entitled to claim qualified immunity under § 1983. 106 F.3d at 593.[1] In *Allen*, the Attorney General of West Virginia had personally reserved a business name to preempt a hostile political nonprofit from using it within the state and advised other state attorneys general to do the same. *Id*. at 588. When the nonprofit sued, the Fourth Circuit found that the Attorney General's actions were clearly established to be beyond the scope of his discretionary authority. *Id*. at 598. In contrast, the Fourth Circuit later found that a corrections officer was acting within the scope of her discretionary

---

[1] The Fourth Circuit was not the first Court to reach this conclusion. *See Shechter v. Comptroller of New York*, 79 F.3d 265, 268-70 (2d Cir. 1996); *Lenz v. Winburn*, 51 F.3d 1540, 1545-47 (11th Cir. 1995); *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir. 1987).

authority when conducting a strip search that was mostly or entirely in conformity with prison guidelines. *Leverette v. Bell*, 247 F.3d 160, 165 (4th Cir. 2001).

The *Allen* Court emphasized that the relevant inquiry is not whether the official's actions were proper or legal, but rather, whether a reasonable official in the defendant's position should have known that the conduct was clearly established to be beyond the scope of their authority. *Id*. at 594; *see also Sims v. Metro. Dade Co.*, 972 F.2d 1230, 1236 (11th Cir. 1992) (finding that to equate "the question of whether the defendants acted lawfully with the question of whether they acted within the scope of their discretion" is "untenable."). But the Court found that "[a]ll the official must know is the limit of [their] own authority" rather than the history of common law as applied to their position. *Allen*, 106 F.3d at 593. Accordingly, "[t]he defendant official bears the burden of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *Id*. at 594 (internal quotation marks omitted, collecting cases). And yet, "[i]n the context of an *Allen* analysis, an official's responsibilities are to be defined expansively." *Leverette*, 247 F.3d at 166 (citing *Harbert Int'l v. James*, 157 F.3d 1271, 1282-83 (11th Cir. 1998)).

This Court has considered the Fourth Circuit's allusion to *Allen* and finds that Mr. Meddings was acting beyond the scope of his established discretionary authority when he allegedly engaged in the conduct described by Plaintiff. Mr. Meddings was employed as parts supervisor at the WBOE bus garage at all relevant points in time. Am. Compl. ¶ 10. The record before the Court does not contain a clear job description for Mr. Meddings.[2] However, in his deposition, he characterized his responsibilities as follows:

---

[2] Rather than begin Mr. Meddings's deposition with a standard inquiry into his employment, Plaintiff initiated the deposition with an implied accusation that Mr. Meddings would lie under oath. *See* Pls.' Mot. for Summ. J., Ex. 5 – Meddings Depo. at 4-5, ECF No. 179-6. This was not helpful to the Court, which had to pour through an un-searchable and un-indexed 351-page deposition. Nor does any of Mr. Meddings's briefing bother to explain what it is he does at the bus

> Well, my job duty wasn't only inventory supervisor. It was handyman and groundsman also. So I spent a lot of time on the grounds and stuff. I done a lot of complaining because the parts room was left open all the time. My job as the parts supervisor – I ordered the parts. I put the parts in the system. And I stocked the parts on the shelves. I also got the parts out and handed them to the drivers of the mechanics.

Pls.' Mot. for Summ. J., Ex. 5 – Meddings Depo. at 50:22-24 – 51:1-7, ECF No. 179-6.

Moreover, Mr. Meddings indicated he had ultimate responsibility to account for missing parts at the depot. *Id*. at 51:21-24 – 52:1-3. As to investigative duties, Mr. Meddings stated that his job was confined to reporting missing inventory to his "higher-ups." *Id*. at 12:16; *see also id*. at 62:13-24, 63:1-13, 64:10, 65:2 (indicating which supervisors he made oral reports to). When questioned, Mr. Meddings repeated that his job was not to update inventory lists or systems, but only to "report it" to supervisors. *Id*. at 13:6-7. In his Supplemental Brief, Mr. Meddings asserts that he "provided a written statement to Deputy Sowards" concerning the alleged break-in "in his capacity as Parts Inventory Supervisor for the WCBOE bus garage." Def.'s Supp. Mem. of Law at 3. At points in his deposition, Mr. Meddings appears to contradict his own narrative, indicating that this statement was only given internally to supervisor Todd Alexander. *See* Pls.' Mot. for Summ. J., Ex. 5 – Meddings Depo. at 54:8-9, ECF No. 179-6.

Regardless, even taking a generous view of the extent of his duties, Mr. Meddings is accused of a variety of behavior clearly outside of the realm of his job description, including illicitly obtaining cell phone records from Mr. Sowards and searching the Reeves home.[3] *See*

---

depot. *See, e.g.*, Def.'s Supp. Mem. of Law. at 2, ECF No. 343 (stating only that "Mr. Meddings worked in the WCBOE bus garage" and that he was "employed as the parts supervisor at the WCBOE bus garage all time relevant herein.").

[3] As an ancillary matter, the Court finds that the death of Mr. Reeves has not substantially changed the nature of the Count III civil conspiracy allegations as to Mr. Meddings. While many of Mr. Reeves's claims abated with his death, *see* ECF No. 340, the vast majority of the alleged offensive conduct complained of affected both Reeveses. For example, the allegedly unconstitutional search of their home was as injurious to Ms. Reeves as it was to her late husband. Further, a reasonable

Mem. Op. & Order at 5, ECF No. 295. This Court has previously found sufficient evidence on the record from which a jury could conclude Mr. Meddings acted out of malice. *Id*. This determination was not disturbed by the Fourth Circuit's remand. *See* 4CCA Op. at 7-8, 11 ("[W]e must take the facts as the district court gives them to us.") (internal quotation marks omitted). Unlike in *Leverette*, Mr. Meddings has not demonstrated that any of the alleged malicious behavior was within the guidelines or scope of his employment. *See* 247 F.3d at 165. In fact, in his Supplemental Memorandum, Mr. Meddings does not argue that these alleged actions are within the ambit of his authority; rather, he asserts that they did not occur at all. *See* Def.'s Supp. Mem. of Law. at 2-11 (providing an extensive narrative of alleged facts); *see also* Pls.' Mot. for Summ. J., Ex. 5 – Meddings Depo. at 141:10-16, ECF No. 179-6 (categorically denying any role in the Reeves investigation). Of course, at the summary judgment stage, the Court cannot blithely accept Mr. Meddings's contested factual narrative. *See, e.g.*, *Anderson*, 477 U.S. at 249.

Mr. Meddings has not met his burden of convincing the Court that a reasonable parts supervisor at a board of education bus depot would believe he had the discretionary authority to direct the police in executing a search warrant at a reviled coworker's home. *See Allen*, 106 F.3d at 594; Mem. Op. & Order at 5, ECF No. 295. Despite his citations to qualified immunity cases involving police officers and the use of excessive force, Mr. Meddings's scope of authority at the bus depot does not appear to encompass directing a criminal investigation (let alone employing force against coworkers). *See, e.g.*, Def.'s Supp. Mem. of Law at 16-7 (citing *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 11 (2021); *City of Tahlequah v. Bond*, 142 S. Ct. 9 (2021)). These

---

jury could find that actions Mr. Meddings allegedly took against Mr. Reeves—such as in the incident regarding his phone—could have been directed towards the termination and prosecution of Ms. Reeves as well. At the summary judgment stage, the Court must make all such inferences in favor of the non-moving party.

analogies appear particularly inapt considering Mr. Meddings's repeated affirmations as to the limitations of his role, requiring him merely to report discrepancies to his supervisor. Pls.' Mot. for Summ. J., Ex. 5 – Meddings Depo. at 12:16, ECF No. 179-6. Accordingly, drawing all inferences in favor of Plaintiff as the non-moving party, the Court concludes that Mr. Meddings was not acting within the scope of his discretionary authority at the time he committed the actions alleged by Ms. Reeves.

Government employment does not bestow blanket impunity upon an individual. Therefore, the Court finds that Mr. Meddings is not entitled to qualified immunity.

### B. Violation of a Clearly Established Constitutional Right

Even if some of Mr. Meddings's alleged offensive conduct was within the scope of his employment, the Court finds that he still would not be entitled to qualified immunity. Under Supreme Court precedent, the Court must first determine whether the record supports a violation of a constitutional right. *See Pearson*, 555 U.S. at 232. In its Memorandum Opinion and Order denying Mr. Meddings's Motion for Summary Judgment, this Court found disputes of material fact which could support a jury finding that Mr. Meddings had violated Ms. Reeves's constitutional rights under her § 1983 conspiracy claim. *See* Mem. Op. & Order at 6-7, ECF No. 295. These findings were not displaced by the Fourth Circuit's holding on Mr. Meddings's qualified immunity claim. As discussed above, the Fourth Circuit held that this Court had neglected to address Mr. Meddings's § 1983 qualified immunity claim and remanded for reconsideration. 4CCA Op. at 12, 16. The Appellate Court did not, however, displace any of this Court's findings as to the disputed factual record. *Id*. at 7-8, 11.

Accordingly, the Court incorporates and reiterates those findings here. *See* Mem. Op. & Order at 6-7, ECF No. 295. The Court found that while Defendant "contends that he acted within the scope of his employment in participating in the existing investigation and has no independent authority to conduct an investigation" this assertion was only supported by Mr. Meddings's own testimony. Mem. Op. & Order at 6, ECF No. 295. Further,

> Plaintiffs' testimony establishes the exact opposite. Plaintiffs have shown at least some facts which could support a finding of conspiracy to falsely accuse the Reeves[es] and subject them to arrest. For example, Plaintiff's evidence suggests that Mr. Meddings was personally very involved in the ensuing police investigation and causing the criminal complaint to issue: Meddings contacted multiple other bus garage employees instructing them not to cooperate with the investigation into the Reeveses, Meddings Depo. at 164-68, ECF No. 179-6; Meddings would text and meet with Deputy Sowards, potentially about the investigation, Meddings Depo. at 166-174; Spaulding Depo. at 31-32, ECF No. 179-5. Indeed, Mr. Meddings may have obtained pictures, texts, and records contained within Mr. Reeves's cell phone, access from which purportedly came from Deputy Sowards. Spaulding Depo. at 31-32, 38; Spaulding Aff. ¶ 20, ECF No. 179-12. Duncan Depo. at 11-12, ECF No.179-21. The record establishes that Mr. Meddings was present at the investigation of the Reeves's home, though parties dispute his level of involvement there. In short, the testimony conflicts greatly and could lead to a reasonable inference in favor of either party's version of events.

*Id*. at 7.

In consideration of these findings, the Court concludes that Ms. Reeves has plausibly asserted a violation of her constitutional rights subject to several disputes of material fact. When determining the elements of a constitutional claim under § 1983, courts must determine the most analogous torts at common law as of 1871. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). "At common law, false imprisonment arose from a detention without legal process, whereas malicious prosecution was marked by wrongful institution of legal process." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019) (internal quotation marks omitted). Both constitute violations of the Fourth Amendment's protection against unreasonable seizure. *Id*.

Here, Ms. Reeves alleges, *inter alia*, that Mr. Meddings was the driving force behind the issuance of a warrant for her arrest without probable cause in violation of the Fourth Amendment. *See, e.g.*, Pls.' Resp. to Def.'s Supp. Mem. of Law at 3, ECF No. 344. As shown above, this allegation is supported by the Court's findings as to the contested factual record. Furthermore, this Court has previously found that the constitutional violations alleged which support the Count III conspiracy claim are analogous to state law torts of "invasion of privacy, false arrest and imprisonment, and malicious prosecution." Mem. Op. & Order at 9-11, ECF No. 340 (considering state tort analogs in the context of survivability). Additionally, this Court has found that Ms. Reeves has plausibly asserted facts which could allow for a reasonable jury to find that her home had been unreasonably searched by Mr. Meddings. Mem. Op. & Order at 7, ECF No. 295. Therefore, the Court finds that Ms. Reeves has plausibly alleged a violation of her constitutional rights.

Finally, the Court considers whether the contours of that right were "clearly established" at the time of Mr. Meddings's alleged conduct. *See Reichle*, 566 U.S. at 664. The "clearly established" standard is met when "existing precedent" shows that the government official may "reasonably anticipate when their conduct may give rise to liability." *Id*. Realistically, it is highly improbable that precedent exists holding that a school bus depot employee may not direct a fraudulent criminal prosecution against a rival coworker's wife. But as both parties acknowledge, the Court's "case law does not require a case directly on point for a right to be clearly established" so long as "existing precedent [has] placed the statutory or constitutional question beyond debate." *Cortesluna*, 142 S. Ct. at 11.

Luckily for Ms. Reeves, the Court finds that it is clearly established beyond debate that government employees may not subject individuals to malicious prosecution, false arrest or

imprisonment, or unreasonable searches and seizures. *See, e.g.*, *Thompson*, 142 S. Ct. at 1337-38 (malicious prosecution), *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007) (false arrest or imprisonment), *Caniglia v. Strom*, 141 S. Ct. 1596, 1599 (2021) (unreasonable searches and seizures within the home). While inadvertence or mistake by an official does not violate the Constitution, ample precedent demonstrates that state officials contravene the Fourth Amendment when they deliberately or with reckless disregard for the truth make false statements which are material to a magistrate's finding of probable cause. *See, e.g.*, *Miller v. Prince George's Cnty.*, 475 F.3d 621, 628 (4th Cir. 2007) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

As discussed above, Mr. Meddings is accused of malicious behavior that falls neatly within those definitions—directing the criminal investigation, causing process to be issued against Ms. Reeves without probable cause, searching the Reeves home and Mr. Reeves's phone records, instructing coworkers not to cooperate with the investigation to Ms. Reeves's detriment, providing false or misleading statements to Deputy Sowards, etc. All of these allegations are subject to hotly contested disputes of fact which must be decided by a jury—not by this Court. Taking each in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could find that Mr. Meddings had conspired to violate Ms. Reeves's clearly established Fourth Amendment rights. Therefore, the Court finds that Defendant is not entitled to qualified immunity.

### IV. CONCLUSION

For the forgoing reasons, the remainder of Defendant Howard Meddings's Motion for Summary Judgment (ECF No. 182) is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

    ENTER:    July 6, 2023

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE